**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDWARD COHEN, | Civil Action No. |
| Plaintiff, | |
| vs. | |
| SORRENTO THERAPEUTICS, INC., | |
| Defendant. | |

**COMPLAINT**

Plaintiff Edward Cohen ("Plaintiff"), by his undersigned attorneys, alleges the following

based upon personal knowledge as to his own acts and information and belief as to all other

matters, based upon the investigation conducted by and through her attorneys:

**NATURE OF THE ACTION**

1.      Item 10(a)(1) of Schedule 14A, 17 C.F.R. § 240.14a-101, lists information

required to be in a proxy statement pursuant to 15 U.S.C. § 78n(a), and requires that "[i]f action

is to be taken with respect to any [compensation] plan pursuant to which cash or noncash

compensation may be paid or distributed" certain information must be furnished to shareholders.

2.      Defendant Sorrento Therapeutics, Inc. ("Sorrento" or the "Company") furnished

shareholders with a definitive proxy statement issued through the Securities and Exchange

Commission's ("SEC") Electronic Data Gathering, Analysis, and Retrieval system ("EDGAR")

on Schedule 14(a) on July 19, 2018 (the "Solicitation"),[1] which included five proposals that

---

[1] The Solicitation is defined to include Definitive Additional Materials filed on July 19, 2018,
stating, in relevant part,

> The Company is providing this supplement (this "Supplement")
> solely to correct an inadvertent error in the number of shares of
> common stock disclosed as outstanding as of the Record Date for

required shareholder action to approve.[2] Of those five shareholder proposals, the third proposal

("Proposal 3") asks shareholders "[t]o consider and vote upon, on an advisory basis, the

compensation of our named executive officers as disclosed in this proxy statement pursuant to

the compensation disclosure rules of the Securities and Exchange Commission[,]" and the fifth

proposal ("Proposal 5") asks shareholders "[t]o consider and act upon a proposal to approve an

amendment to the Company's Amended and Restated 2009 Stock Incentive Plan (the '2009

Plan') to increase the maximum number of shares authorized for issuance under the 2009 Plan by

7,600,000 shares from 11,260,000 shares to 18,860,000 shares[.]"

    3.    As described below, Proposals 3 and 5 do not comply with the SEC's disclosure

requirements for proxy statements, codified at 17 C.F.R. § 240.14a-101 and 17 C.F.R. § 229.402.

    4.    The genesis of these disclosure issues is the omission of required information and

conflicting information in the Company's SEC filings. To wit, the "Pay Ratio Disclosure"

section of the Solicitation states "*[a]s of December 31, 2017, we had 204 employees* and 19

consultants and advisors" but the Company contrastingly disclosed in its Form 10-K for the

fiscal year ended December 31, 2017, as filed with the SEC on March 16, 2018, as amended (the

---

the Annual Meeting appearing on page 2 of the Proxy Statement under the heading "Who is Entitled to Vote?" The correct number of shares outstanding as of the Record Date is 116,732,276. Accordingly, the corrected number of shares of common stock outstanding as of the Record Date is provided below and replaces the reference to 116,240,963 shares of common stock outstanding as of the Record Date as disclosed in the Proxy Statement.

[2] The Solicitation states that "[w]e intend to mail this proxy statement and the accompanying proxy card on or about July 24, 2018 to all stockholders of record entitled to vote at the Annual Meeting."

"2017 10-K"), that "***As of December 31, 2017, we had 162 employees*** and 19 consultants and advisors." (emphasis added).[3]

5.      Because an informed vote on Proposal 3 requires an accurate Pay Ratio Disclosure, and because an informed vote on Proposal 5 requires the approximate number of persons eligible to participate in the 2009 Plan at or near the time of the issuance of the Proxy Statement, both numbers of employees (*i.e.* as of December 31, 2017, and at or near the time of the issuance of the Proxy Statement) must be disclosed before the Annual Meeting.

6.      Because of Defendant's non-compliance with 17 C.F.R. § 240.14a-101 and 17 C.F.R. § 229.402, Plaintiff, a shareholder of record of the Company entitled to vote at the Company's August 24, 2018, Annual Meeting of Stockholders (including any adjournments or postponements thereof, the "Annual Meeting"), brings this stockholder's direct action under Section 14(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78n(a), and the rules and regulations of the SEC, to enjoin a vote by its shareholders on Proposal 5.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

8.      In connection with the acts, omissions, conduct and wrongs alleged herein, Defendant used the mails and the means or instrumentalities of interstate commerce.

---

[3] Highlighting this discrepancy, the 2017 10-K is being sent to shareholders along with the solicitation, although the Solicitation specifically notes that "Except as otherwise stated, the Annual Report on Form 10-K is not incorporated into this proxy statement and should not be considered proxy solicitation material." In essence, shareholders are being sent patently conflicting information in one package and, without correction, would have to guess which information is accurate.

9.      Venue is proper in this District because, as allowed under Section 27(a) of the Exchange Act, this District is where the violation at issue in this case occurred because numerous Solicitations, including Plaintiff's, were or will be mailed to Sorrento shareholders residing in this District.

## PARTIES

10.      Plaintiff, a Sorrento shareholder as of the close of business on July 16, 2018 (the "Record Date"), is entitled to notice of, to participate in, and to vote at the Annual Meeting. Upon information and belief, he will receive the Proxy Statement by mail in this District based upon the text of the Solicitation quoted in n.1, *supra*, and the fact that Plaintiff resides in this District.

11.      Sorrento is a corporation organized under the laws of Delaware with offices at 4955 Directors Place, San Diego, California 92121. Sorrento is a clinical stage biotechnology company focused on delivering clinically meaningful therapies to patients and their families, globally. According to the Solicitation, as amended, as of the Record Date "there were 116,732,276 shares of common stock outstanding. Each share of common stock represents one vote that may be voted on each proposal that may come before the Annual Meeting." Sorrento's stock is trades on the NASDAQ stock exchange under the symbol "SRNE".

## Wrongful Acts and Omissions

### Proposal 3

12.      The statements about the number of Company employees as of December 31, 2017 in the 2017 10-K and the "Pay Ratio Disclosure" section of the Solicitation, as set forth above, cannot both be correct. The Company either had 204 employees, 162 employees, or some other amount of employees as of December 31, 2017. In addition, to the extent the Solicitation is inaccurate as to the Company's number of employees as of December 31, 2017, any other

resulting errors in the Pay Ratio Disclosure that follow that error must also be corrected before any shareholder vote is allowed in order to satisfy, *inter alia*, 17 C.F.R. § 229.402, which requires, among other things:

> A registrant shall disclose the date within the last three months of its last completed fiscal year that it selected pursuant to paragraph (u)(3) of this Item to identify its median employee.

> \* \* \*

> In determining the employees from which the median employee is identified, a registrant may use its employee population or statistical sampling and/or other reasonable methods.

13.     Proposal 3, an "advisory vote to approve the compensation of our named executive officers" that asks "stockholders vote 'FOR' the following resolution:" "RESOLVED, that stockholders of Sorrento Therapeutics, Inc. approve, on an advisory basis, the compensation of the named executive officers, as disclosed pursuant to Item 402 of Regulation S-K, including the Compensation Discussion and Analysis, compensation tables and narrative discussion, in this Proxy Statement" includes the "Pay Ratio Disclosure" section of the Solicitation, which is required to be disclosed pursuant to Item 402(u) of Regulation S-K, and which compares the company's CEO's salary to its median employee.

14.     While the Solicitation explains the "methodology including key assumptions and estimates used to identify the employee with compensation at the median of the annual total compensation of all our employees[,]" the discrepancy between the 204 employees disclosed in the 2017 10-K and the 162 employees disclosed in the Solicitation makes it likely the wrong data were reviewed and the median employee calculation is erroneous, which would have a ripple effect and make any ratio calculated using it also erroneous.

15.     Thus, Proposal 3 must also be restated accurately for shareholders to have an informed vote. Shareholders cannot evaluate the Pay Ratio Disclosure and cast a vote with respect to Proposal 3 without accurate data.

16.     This contravention of the SEC rules renders the Solicitation unlawful under § 14(a) of the Exchange Act and subject to being enjoined.

**Proposal 5**

17.     Proposal 5 requests that Sorrento's shareholders vote at the Annual Meeting to amend the 2009 Plan "to increase the maximum number of shares authorized for issuance under the 2009 Plan by 7,600,000 shares from 11,260,000 shares to 18,860,000 shares", just over 6.54% of the Company's outstanding common stock, and together with the 3,139,331 shares still grantable under the 2009 Plan[4] represents over 9.2%[5] of the Company's outstanding shares. Looked at another way, "the total aggregate equity value of the additional authorized shares being requested under the 2009 Plan (above the shares currently remaining available for issuance under the 2009 Plan), based on the closing price of our common stock on June 29, 2018, is $54,720,000."[6]

18.     The Company is seeking shareholder approval of Proposal 5, in part, because the Company's Board of Directors (the "Board") believes that:

---

[4] The Solicitation states that "As of June 30, 2018, excluding the requested share reserve increase, 3,139,331 shares remain available for issuance under the 2009 Plan and 7,616,950 shares were subject to outstanding awards under the 2009 Plan."

[5] The Solicitation states that "If the proposed increase to the 2009 Plan's share reserve is approved, the issuance of the additional shares to be reserved under the 2009 Plan would dilute existing stockholders by an additional 9% on a fully diluted basis, based on the number of shares of our common stock outstanding as of June 30, 2018."

[6] Similarly, the shares currently remaining available for issuance under the 2009 Plan had a value of $22,603,183.20 based upon the closing price of Sorrento's stock on June 29, 2018.

Our equity incentive plan is critical to our long-term goal of building stockholder value. As discussed in the "Executive and Director Compensation and Other Information" section of this proxy statement, equity incentive awards are central to our compensation program and constitute a significant portion of our named executive officers' total direct compensation. Our Board and its Compensation Committee believe that our ability to grant equity incentive awards to new and existing employees, directors and eligible consultants has helped us attract, retain and motivate professionals with superior ability, experience and leadership capability. Historically, we have issued stock options and restricted stock under the 2009 Plan. These forms of equity compensation align the interests of our employees, directors and consultants with the interests of our stockholders, encourage retention and promote actions that result in long-term stockholder value creation.

19.     Proposal 5 does not provide all of the legally required information because it does not provide sufficient information for Sorrento stockholders to understand how many participants are eligible to participate in the Plan, and thus it does not comply with Item 10(a)(1) of Schedule 14A, 17 C.F.R. § 240.14a-101, which requires:

*Item 10. Compensation Plans.* If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:

**(a)** *Plans subject to security holder action.*

**(1)** Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

20.     Instead of providing the "approximate number of persons in each such class, and … the basis of such participation," Proposal 5 only tells stockholders the following about who will receive these awards:

Our equity incentive program is broad-based. As of June 30, 2018, *all of our employees* had received grants of equity awards, all six of our non-employee directors had received grants of equity awards and approximately seven of our approximately 18 consultants had received grants of equity awards. We believe we must continue to offer a competitive equity compensation plan in

7

order to attract, retain and motivate the industry-leading talent imperative to our continued growth and success.

(emphasis added).

21.     The Solicitation omits the approximate number of employees who qualify as eligible participants under the Plan. The Solicitation also omits the number of persons "to whom an offer of employment has been extended by the Company or an Affiliate", which is included as a separate class of persons in the 2009 Plan's definition of Eligible Participants.

22.     The Solicitation states that "the ability to continue to grant equity compensation is vital to our ability to continue to attract and retain employees in the competitive labor markets in which we compete", without quantifying the total number of employees as of June 30, 2018, or any other date close to the Annual Meeting.

23.     The closest the Solicitation comes to disclosing the required information is disclosing, in the "Pay Ratio Disclosure" (that "*[a]s of December 31, 2017, we had 204 employees and 19 consultants and advisors*") is insufficient to satisfy Item 10(a)(1) of Schedule 14A. Ignoring the discrepancy discussed above, whatever the number of employees the Company had as of December 31, 2017, is insufficient to satisfy Item 10(a)(1), as the Company must disclose approximate number of persons at or near the time of the issuance of the Proxy Statement so that shareholders can understand how many participants are eligible to participate in the Plan especially where, as here, the Company's number of employees has changed significantly year-over-year.[7] Shareholders cannot decide whether the number of shares selected

---

[7] By way of example, prior Company Form 10-Ks disclose that "As of December 31, 2013, we had 50 employees and 23 consultants and advisors[,]" "[a]s of December 31, 2014, we had 66 employees and 18 consultants and advisors[,]" "[a]s of December 31, 2015, we had 97 employees and 15 consultants and advisors[,]"[a]s of December 31, 2016, we had 154 employees and 21 consultants and advisors" and, contrastingly, "[a]s of December 31, 2017, we had 162 employees and 19 consultants and advisors" *or* "[a]s of December 31, 2017, we had 204

by the Board for possible distribution is reasonable and whether they should support Proposal 5 without having accurate data.

24.     Again ignoring the discrepancy highlighted above, whatever number of employees the Company disclosed that it had as of December 31, 2017, is insufficient to satisfy Item 10(a)(1), as the Company must disclose approximate number of persons now so that shareholders can understand how many participants are eligible to participate in the Plan, especially considering that the Company's number of employees has changed significantly year-over-year. Thus, it is highly likely that there was a material change in the number between December 31, 2017 and the date the Proxy Statement was issued. Shareholders cannot decide whether the number of shares proposed by the Board to be issued is reasonable without having accurate data, and shareholders cannot evaluate the Pay Ratio Disclosure if that is based upon erroneous data.

25.     As a result of the above defects, the Solicitation does not inform shareholders of how many participants may be awarded the additional 7,600,000 shares that Sorrento's stockholders are being asked to approve or the basis of their receipt of such awards by the unknown amount of participants. Thus, the Company must disclose to its shareholders, before any vote is taken, the approximate number of persons *in each class* of persons who will be eligible to participate in the 2009 Plan, and state the basis of such participation of such participants.

*       *       *

---

employees and 19 consultants and advisors" (depending upon which of those disclosures is right).

26.     The preceding paragraphs state a direct claim for relief against Sorrento under § 14(a) of the Exchange Act for acting in contravention of the rules and regulations prescribed by the SEC.

27.     As a result of these actions, Plaintiff will be injured, and he has no adequate remedy at law. He will suffer irreparable harm if no action is taken to ameliorate this harm because, in addition to being forced to vote without this information, the Plan allows for the issuance of 7.6 million shares, worth over $54.7 million as of the date selected in the Solicitation, to be granted to an unknown number of persons who qualify as eligible, and he and other shareholders will not be able to cast an informed vote about executive compensation.

28.     It is necessary for the Court to take action to enjoin the vote beforehand to prevent shares from being distributed to participants based on an uninformed vote that lacks proper and informed shareholder approval because unwinding awards following the Annual Meeting would be impracticable if not impossible.

29.     To ameliorate injury, the Court should grant injunctive relief and stay the shareholder vote unless the Company issues a supplemental proxy statement or a filing that supplements the Solicitation that complies with 17 C.F.R. §240.14a-101, Item 10(a)(1), and 17 C.F.R. § 229.402, and which is timely made available to shareholders.

30.     Sorrento should be enjoined from presenting Proposals 3 and 5 for a stockholder vote at the Annual Meeting or certifying or otherwise accepting any vote cast in connection with Proposals 3 and 5 unless the appropriate amendments are timely made.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor, and against Sorrento, as follows:

(A)     A preliminary and permanent injunction, enjoining Sorrento from:

      i.     presenting Proposals 3 and 5 for a shareholder vote at the Annual Meeting unless a supplemental proxy statement that complies with 17 C.F.R. §240.14a-101, Item 10(a)(1), and 17 C.F.R. § 229.402 is timely furnished to shareholders;

      ii.     certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Sorrento stockholder in connection with Proposals 3 and 5 in the Solicitation unless a supplemental proxy statement that complies with 17 C.F.R. §240.14a-101, Item 10(a)(1), and 17 C.F.R. § 229.402 is timely furnished to shareholders;

(B)    A preliminary and permanent injunction requiring Sorrento to furnish a supplemental proxy statement that complies with 17 C.F.R. §240.14a-101, Item 10(a)(1), and 17 C.F.R. § 229.402;

(C)    A preliminary and permanent injunction enjoining Sorrento from otherwise proceeding at its Annual Meeting at the set time or at any other time, in a manner inconsistent with 17 C.F.R. §240.14a-101, Item 10(a)(1), and 17 C.F.R. § 229.402;

(D)    Awarding Plaintiff reasonable attorney's fees and expenses incurred in bringing this action and incurred in creating a benefit for all of Sorrento's shareholders to the extent that a common benefit is conferred, and;

(E)    Granting such other and further relief as this Court may deem just and proper.

Dated: July 23, 2018            STULL, STULL & BRODY

                     /s/ Michael J. Klein
                     Michael J. Klein
                     6 East 45th Street
                     New York, NY 10017
                     Phone: (212) 687-7230
                     Fax: (212) 490-2022
                     mklein@ssbny.com

                     *Attorneys for Plaintiff*